# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

**RODNEY JOHN NECAISSE**                                                   **PLAINTIFF**

**V.**                                                    **CASE NO.: 1:15-cv-219-HSO-JCG**

**CAROLYN W. COLVIN,**                                       **DEFENDANT**
*Acting Commissioner of Social*
*Security*

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Rodney John Necaisse seeks judicial review of the decision of the Commissioner of the Social Security Administration denying his claim for Disability Insurance Benefits ("DIB"). The Commissioner found that Necaisse was not disabled, as defined by the Social Security Act, despite his severe impairments of borderline intellectual functioning, depressive disorder, radiculopathy, status-post C-5 fusion, status-post L4-5 laminotomy and status-post lumbar surgery. The Administrative Law Judge ("ALJ") determined that Necaisse could not return to his previous work but could perform other work that exists in significant numbers in the national economy. The undersigned submits this Report and Recommendation to the District Judge and recommends that Rodney John Necaisse's Motion for Summary Judgment (ECF No. 12) be DENIED and that the decision of the Commissioner be AFFIRMED.

# I. BACKGROUND

A. Procedural History

Necaisse was 49 years old on his alleged disability onset date. He completed high school while attending regular classes. On October 3, 2010, Necaisse filed an application for DIB, alleging disability beginning October 9, 2008. His date last insured for purposes of his application was December 31, 2010.

Necaisse's claims were initially denied on January 27, 2011 and upon reconsideration on March 14, 2011. An ALJ heard Necaisse's case on March 19, 2012, and issued an unfavorable decision on April 27, 2012. The Appeals Council remanded that decision for further discussion of Necaisse's mental limitations and the medical opinion evidence of treating physicians, and, if necessary, to obtain additional vocational expert testimony. (ECF No. 9, at 233-34). A different ALJ held a second hearing on Necaisse's application on November 20, 2013. The ALJ heard testimony from a vocational expert ("VE") and Necaisse and, on February 7, 2014, issued a decision holding that Necaisse was not entitled to DIB.

B. The ALJ's Findings

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). First, the claimant

must prove she is not currently engaged in substantial gainful activity. 20 C.F.R. §
404.1520(b). Second, the claimant must prove her impairment is "severe" in that it
"significantly limits [her] physical or mental ability to do basic work activities ...."
*Id.* § 404.1520(c). At step three, the ALJ must conclude the claimant is disabled if
she proves that her impairments meet or are medically equivalent to one of the
impairments listed in Appendix 1 of Subpart P to 20 C.F.R. pt. 404. *Id.* §
404.1520(d). Accordingly, if a claimant's impairment meets the requisite criteria,
that claimant's impairments are of such severity that they would prevent any
person from performing substantial gainful activity. *Id.* § 404.1525.

Fourth, the claimant bears the burden of proving she is incapable of meeting
the physical and/or mental demands of her past relevant work. *Id.* § 404.1520(e). If
the claimant is successful at all four of the preceding steps, the burden shifts to the
Commissioner at step five to prove, considering the claimant's residual functional
capacity, age, education and past work experience, that she is capable of performing
other work. *Id.*  § 404.1520(f)(1). If the Commissioner proves that other work the
claimant can perform exists (in significant numbers in the national economy), the
claimant is given the chance to prove that she cannot, in fact, perform that work.
*Muse*, 925 F.2d at 789.

At step one, the ALJ found that Necaisse had not engaged in substantial
gainful activity since October 9, 2008, the alleged onset date, through December 31,
2010, the last date insured. At step two, the ALJ found that Necaisse had the severe
impairments of borderline intellectual functioning, depressive disorder,

3

radiculopathy, status-post C-5 fusion, status-post L4-5 laminotomy and status-post lumbar surgery. At step three, the ALJ determined that Necaisse did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in Appendix 1 to Subpart P of 20 C.F.R. Part 404.

Next, the ALJ determined that Necaisse retained the residual functional capacity ("RFC") to perform work at the sedentary level as defined in 20 C.F.R. 404.1567(a).

> [Necaisse] would require a sit/stand option, whereby he could sit for up to 20 minutes at a time and stand no more than 15 minutes at a time. He could sit and stand a total of 8 hours in workday. He could only walk 50 to 100 yards at a time. He could bend, stoop, and climb ramps and stairs occasionally. He would be unable to balance or work around heights. He would have a mild degree of difficulty in maintaining social functioning, would have a moderate degree of limitation in maintaining concentration, persistence, and pace. The definition of mild degree of limitation is that it would cause little or no effect on his ability to perform his work; moderate degree of limitation would limit the claimant to routine, repetitive tasks with no production quotas.

(ECF No. 9, at 74-75). In reaching this finding, the ALJ used a two step-process to evaluate Necaisse's impairments.

> [I]t must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to

4

> produce the claimant's pain or other symptoms has been shown, the [ALJ] must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effect of pain or other symptoms are not substantiated by objective medical evidence, the [ALJ] must make a finding on the credibility of the statements based on a consideration of the entire case record.

*Id.* at 75. The ALJ concluded that Necaisse's medically determinable impairments could cause the complained of symptoms but that Necaisse's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. . . ." *Id.* at 76.

At step four, the ALJ concluded that Necaisse was unable to perform any past relevant work. The VE testified that Necaisse had previously worked as "a casting operator . . . a medium, skilled job with a specific vocational preparation (SVP) of five and [as a] casting operating laborer . . . which is a heavy, unskilled job with an SVP of two." *Id.* at 79. The ALJ concluded that the physical demands of Necaisse's past relevant work exceeded his RFC.

At step five, the ALJ found that there are other jobs existing in significant numbers in the national economy that Necaisse can perform. The VE testified that sedentary jobs existed in the economy that Necaisse could perform given Necaisse's additional limitations. Such representation occupations included:

1) Booth cashier . . ., which is a sedentary, semi-skilled job with an SVP of three with 250,000 jobs in the nation;
2) Order taker . . ., which is a sedentary, unskilled job with an SVP of two, with 135,000 jobs in the nation;

     3)  Gate tender . . ., which is a sedentary, unskilled job with an SVP of two, with 90,000 jobs in the nation.

*Id.* at 80.

The Appeals Council denied review of the second ALJ's decision on May 7, 2015, thereby rendering the ALJ's decision the final decision of the Commissioner. Having exhausted his administrative remedies, Necaisse commenced the present action on July 8, 2015. (ECF No. 1).

C.  <u>Medical Treatment History</u>

1. Physical Impairments

Necaisse suffers from neck and back pain. The testimony at the hearing showed that he underwent spinal surgery in 2000, 2005, and 2007. (ECF No. 9, at 111). The final surgery was "a lumbar laminectomy with lysis of adhesions" (removal of scar tissue). *Id.* at 414-15. On March 27, 2009, Necaisse's treating physician, Dr. James Gosey, observed a moderately positive Spurling's sign in Necaisse's right shoulder and a half-inch calf atrophy in his left leg. *Id.* at 412. An MRI revealed diffuse posterior bulging of the C4-C5 intervertebral disc. *Id.* at 413. On April 17, 2009, an MRI showed mild degeneration, and Necaisse made an appointment for an epidural injection. *Id.* at 411. As of July 17, 2009, Necaisse had received epidural treatments in the preceding six weeks, but Dr. Gosey noted that they had only provided relief for a week afterwards. *Id.* Necaissse reported continuing leg and lower back pain, and Dr. Gosey recommended a TENS unit. *Id.*

On October 23, 2009, "Dr. Gosey opined [Necaisse] was permanently not 'fit for duty' due to his multiple surgeries and long-term pain issues." *Id.* at 410. Dr.

Gosey reiterated this conclusion on April 28, 2010. *Id.* On October 27, 2010, Necaisse reported back pain and leg pain to Dr. Gosey. *Id.* On May 23, 2011, Dr. Gosey observed left lumber tenderness that had not resolved after several days' rest. *Id.* at 470. On December 28, 2011, Dr. Gosey noted symptoms of L5 radiculopathy and scarring around the nerve root but informed Necaisse that his previous surgeries had made further surgery impossible. *Id.* at 481. Dr. Gosey also noted left lumbar tenderness and difficulty sitting for extended periods. *Id.* On January 10, January 26, and February 9 of 2012, Necaisse received lumbar epidural steroid injections. *Id.* at 404-06.

On August 19, 2013, Dr. Gosey evaluated Necaisse again and opined that Necaisse would "constantly" experience pain severe enough to interfere with attention and concentration, was moderately limited in his ability to deal with work stress, could walk three to four city blocks without rest, could sit for 30 minutes at one time and for two hours total, could stand for 30 minutes at one time and could stand or walk for two hours total. *Id.* at 498-99. Dr. Gosey further opined that Necaisee could only occasionally lift and carry ten pounds or less, would need to walk every 30 minutes for five to ten minutes, would need to be able to shift positions at will and to have unscheduled breaks daily for 15 to 30 minutes, and would likely be absent from work once per month. *Id.* at 499-500. Lastly, Dr. Gosey indicated that these limitations had been present since 2005. *Id.* at 501.

2. Mental Impairments

On April 8, 2009, Necaisse complained that he had been irritable and angry for the previous four years. *Id.* at 449. He also reported that he was "functionally illiterate" and "[did not] believe that he could learn to read." (ECF No. 9, at 450). A social worker, Jim Reid, L.M.S.W., assessed Necaisse as having borderline intellectual functioning. *Id.* On April 22, 2009, Reid suggested to Necaisse and his disability attorney that they seek IQ testing and an educational assessment. *Id.* at 460. On June 19, 2009, Necaisse reported no anger outbursts since his previous visit. *Id.* at 457. On July 16, 2009, Necaisse reported "vivid dreams and teeth clicking" while taking his medication. *Id.* at 456. On August 13, 2009, and September 17, 2009, Necaisse reported improvement while on his medications. *Id.* at 454-55. On April 8, 2010, an unidentified physician "indicated that Necaisse had diagnoses of borderline intellectual functioning, depressive disorder, and a generalized social phobia." *Id.* at 444. On August 19, 2010, "an unknown source" noted increased irritability and mild depression in Necaisse and increased the dosage of his medication. (ECF No. 13, at 9); (ECF No. 9, at 452).

On January 6, 2011, Necaisse saw Ethel Hetrick, Ph. D., for a comprehensive mental status evaluation. (ECF No. 9, at 416-18). Necaisse's wife reported that Necaisse had difficulty reading, and Necaisse stated that he graduated from high school in 1982 but was advanced through each grade because he played sports. *Id.* at 416. Necaisse stated that his wife largely handled the family finances, household chores, and driving. *Id.* at 416-18. Dr. Hetrick concluded that Necaisse "has the

mental capacity to perform routine, repetitive tasks. He may have a reading disorder however." *Id.* at 419. She suggested that "a Psychological Evaluation would help clarify level of intellectual functioning as well as academic functioning." *Id.* at 419.

On August 15, 2013, Brian Mahar, M.D., noted symptoms such as sleep and mood disturbance, personality change, social withdrawal, decreased energy, feelings of worthlessness, difficulty thinking or concentrating, and generalized persistent anxiety. *Id.* at 493-94.

## II. <u>STANDARD OF REVIEW</u>

A review of the Commissioner's denial of benefits is limited to two inquiries: (1) whether the decision is supported by substantial evidence in the record as a whole, and (2) whether the Commissioner applied the correct legal standards. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). Substantial evidence must be more than a mere scintilla, but it need not be a preponderance. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales,* 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen,* 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983)).

Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner, even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala,* 36 F.3d 431, 434 (5th Cir. 1994); *Hollis v. Bowen,* 837 F.2d 1378, 1383 (5th Cir. 1988); *Harrell,* 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994).

### III. DISCUSSION

Necaisse alleges three assignments of error: (1) the ALJ erred by not acknowledging Necaisse's literacy level when assessing RFC and not adequately developing the record related to Necaisse's academic and intellectual functioning; (2) the ALJ erred by not following the Appeals Council's remand order by not discussing Dr. Gosey's 2011 and 2013 opinions; and (3) the ALJ erred in evaluating the credibility of Necaisse's testimony.

#### A. Necaisse's Academic and Intellectual Functioning

Necaisse argues first that the ALJ did not adequately discuss his reading comprehension in his opinion and second that the ALJ should have ordered a consultative examination to assess Necaisse's reading level. Necaisse further argues that if Necaisse is illiterate, then the ALJ did not meet his burden at step five

because the VE testified that all of the representative occupations would require literacy.

It is true that there is scant discussion of Necaisse's reading comprehension in the ALJ's opinion. The ALJ noted that "[f]or recreation, [Necaisse] watches television, but does not read." (ECF No. 9, at 73). But an "ALJ does not have to adhere to a specific formula when explaining his decision and is only required to 'articulate reasons for objecting to the claimant's subjective complaints' when the evidence in the record 'clearly favors the claimant.'" *Quintanilla v. Astrue*, No. 11cv1040, 2013 WL 4046371, at *5 (W.D. Tex. Aug. 8, 2013) (quoting *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994)). The Commissioner argues that Necaisse's "ability to complete" "an eight-page, handwritten Adult Function Report" and a "Work History Report" as part of his application for DIB with "logical and coherent" writing and a few misspellings "is substantial evidence that [Necaisse] can read and write." (ECF No. 17 at 5). The Commissioner further points out that "[n]o medical source opined [Necaisse] was illiterate" and that the only evidence of Necaisse's illiteracy are his "subjective statements to others." *Id.*

The ALJ did not order additional mental examinations of Necaisse but relied on the opinions of Dr. Hetrick and Amy Hudson, Ph. D., that were already in the record. "The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Kane v. Keckler*, 731 F.2d 1216, 1219 (5th Cir. 1984)). But the opinion of an ALJ will only be found to be "not supported

by substantial evidence if the claimant shows (1) that the ALJ failed to fulfill his duty to adequately develop the record, and (2) that the claimant was prejudiced thereby." *Id.*

"An ALJ must order a consultative evaluation when such an evaluation is necessary to enable the ALJ to make the disability determination. A consultative evaluation becomes 'necessary' only when the claimant presents evidence sufficient to raise a suspicion concerning a non-exertional impairment." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citations omitted). Although Mr. Reid and Dr. Hetrick suggested additional examinations of Necaisse's intellectual functioning would be beneficial, this does not bind the ALJ to that suggestion. Neither Dr. Hetrick nor Mr. Reid indicated that they believed Necaisse was illiterate. Dr. Hetrick even noted that Necaisse "responded appropriately to reading 'Open your mouth'" during his examination. (ECF No. 9, at 418). No medical source opined that Necaisse was illiterate; only Necaisse asserts his illiteracy. *Id.* at 192. The Fifth Circuit has "held that isolated comments by a claimant are insufficient, without further support, to raise a suspicion of non-exertional impairment." *Id.* (citing *Pierre v. Sullivan*, 884 F.2d 799, 802-03 (5th Cir. 1989)). The ALJ ordered a taxpayer-funded psychological consultative examination. There is substantial evidence in the record to support the ALJ's implicit finding that Necaisse was not illiterate and to support his decision not to order additional consultative examinations to determine Necaisse's literacy level.

B. Discussion of Dr. Gosey's 2011 and 2013 Opinions

Necaisse argues that the ALJ erred by "fail[ing] to discuss or explain his rejection of opinions Dr. Gosey rendered on December 28, 2011 and August 18, 2013." (ECF No. 13, at 17). The Commissioner argues that the 2011 opinion addressed "a legal issue reserved for the Commissioner and, as such, [was] not entitled to any consideration or significance." (ECF No. 17, at 7). The Commissioner also argues that the 2013 opinion came after Necaisse's last date insured and is not relevant to the ALJ's analysis.

The ALJ acknowledged the existence of "other, more recent medical evidence in [Necaisse's] file." (ECF No. 9, at 78). But he afforded it little weight, saying "[t]his evidence is not discussed in detail or cited to in this decision because of its irrelevance to a determination of the claimant's disability status from the alleged onset date of October 9, 2008 through his date last insured of December 31, 2010." *Id.*

Although the opinions of a treating physician are "accorded considerable weight in determining disability . . ., the ALJ has sole responsibility for determining a claimant's disability status." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990) (internal quotation marks omitted). To the extent that Dr. Gosey opined as to Necaisse's disability rather than his physical impairments directly, that opinion may be disregarded. Further, "[e]vidence is not material if it relates to a disability or to the deterioration of a previously non-disabling condition resulting after the period for which benefits are sought." *Ripley v. Chater*, 67 F.3d 552, 555 n.14 (5th Cir. 1995) (citing *Falco*, 27 F.3d at 164). According to Fifth Circuit precedent, the

13

ALJ was not required to consider Dr. Gosey's medical opinions rendered after the last date insured.

In its remand order, the Appeals Council ordered the ALJ to give further consideration to the treating source opinions of Dr. Gosey. Necaisse argues that the Appeals Council ordered the ALJ to adopt Dr. Gosey's findings from the 2011 and 2013 opinions. However, the Appeals Council did not. It found that "further evaluation of the treating source opinion [was] needed" and ordered that the ALJ "[g]ive further consideration to the treating source opinion….and explain the weight given to such opinion evidence." (ECF No. 9, at 234). The ALJ complied with this instruction. Plaintiff's arguments do not alter the Court's conclusion that the ALJ's opinion is supported by substantial evidence.

C.  Credibility of Necaisse's Testimony

The ALJ concluded that although Necaisse's symptoms could be caused by his impairments, Necaisse's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." *Id.* at 76. After reviewing Necaisse's medical history, the ALJ described his treatment as "intermittent," "routine," and "conservative." *Id.* The ALJ also found that most of Dr. Gosey's notes related to Necaisse's significant symptoms were "just a recitation of the claimant's subjective complaints." *Id.* The ALJ determined, based on Dr. Gosey's notes, that Necaisse "was able to function without his medication[,] suggest[ing] that the severity of his pain has not been as limiting as he alleges." *Id.* at 77.

14

It is well established that an ALJ's credibility determinations are entitled to great deference. *Newton*, 209 F.3d at 459. "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7p, 1996 WL 374186, at *5. "Evidence that a claimant receives only conservative treatment substantially supports an ALJ's adverse credibility finding against complaints of incapacity and severe symptoms." *Shumock v. Astrue*, No. 12cv520, 2012 WL 1289160, *10 (W.D. La. Mar. 1, 2013) (citing *Parfait v. Bowen*, 803 F.2d 810, 813-14 (5th Cir. 1986)). The ALJ acknowledged Necaisse's reported symptoms, but found that objective evidence contradicted Necaisse's testimony. Thus, the ALJ's credibility determination is supported by substantial evidence.

## IV. RECOMMENDATION

Having considered the briefs filed by Necaisee and the Commissioner, the record, and relevant legal authority, the undersigned United States Magistrate Judge recommends that Necaisse's Motion for Summary Judgment (ECF No. 12) be DENIED and the opinion of the Commissioner be AFFIRMED.

## V. NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the

district judge that they do not intend to respond to the objection.

L.U. Civ. R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SIGNED, this the 30th day of January, 2017.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE